IN THE UNTIED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| CHROMALOX, INC., | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) NO. 3:06-0546 |
| | ) JUDGE HAYNES |
| GEORGIA OVEN, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM

Plaintiff, Chromalox, Inc. a Delaware corporation, filed this action under 28 U.S.C. § 1332, the federal diversity jurisdiction statute, against the Defendants: Georgia Oven, a Georgia corporation, and Michael Kelley, a Tennessee citizen, former Chromalox employee and current Georgia Oven employee. The gravamen of the Plaintiff's claim is that Kelley's employment with Georgia Oven violates Kelley's agreement not to compete and his confidentiality agreement with Chromalox both of which Kelley signed during his tenure with Chromalox.

Before the Court is the Plaintiff's motion for a temporary injunction (Docket Entry No. 36) asserting, in essence, that the Defendants are causing the violations of Kelley's agreement not to compete and Kelley's confidentiality agreement with Chromalox. In response, the Defendants assert that Kelley's agreement not to compete is not violated because Kelley's work for Georgia Oven is a sales representative to original equipment manufacturers. Kelley's work with Georgia Oven is not the same work Kelley performed for Chromalox. In addition, the Defendants argue that the confidential information described by the Plaintiff, does not qualify as trade secrets or confidential information under Tennessee law. Finally, the Defendants argue that Chromalox has failed to demonstrate irreparable injury because Chromalox has not lost any client or business since Kelley's

employment by Georgia Oven.

Set for below are the Court's findings of fact and conclusions of law. In sum, the Court concludes that Plaintiff has established a violation of Kelley's agreement not to compete, but has not met the requirements of Tennessee law to be entitled to injunctive relief.

## A. Findings of Fact

Chromalox manufactures electrical heating equipment with various heating elements, sensors, and controls. Chromalox manufactures 5,000 heating products and employs Oven 200 field representatives. Chromalox's primary products are sold to original equipment manufacturers that integrate Chromalox's products as a component of its Ovenall system. The manufacturer then resells the final product through its authorized distributors and representatives. Chromalox distributors can be either exclusive or nonexclusive, but nonexclusive distributors cannot sell products that directly compete with Chromalox's products.

Georgia Oven distributes heating products, including Chromalox's products. In a word, Georgia Oven does not manufacture heating products. Georgia Oven sells only to end users, and does not sell to original equipment manufacturers or other distributors.

Beginning in 2000, Chromalox negotiated and ultimately purchased the Ogden firm, an electrical firm for which Kelley was an employee. In 2003, Chromalox decided to close one of Odgen's plants and relocate its operations to a Chromalox plant in LaVergne, Tennessee. In a May 2, 2003 letter, Chromalox offered Kelley employment at the LaVergne plant. Kelley subsequently signed an employment agreement that is dated September 2, 2003 and provides in relevant part:

> "In consideration of my employment by Chromalox, Inc., . . . [Mr. Kelley] covenants and agrees that during the period of employment and for a period of one (1) year following termination of that employment, [Mr. Kelley] <u>will not engage in or enter</u>

2

<u>the employ of, or have any interest in, directly or indirectly, any other persons, firm, corporation or entity engaged in the business of designing, engineering, manufacturing, marketing or selling: electrical heating elements or systems</u>, heat tape, electric boilers, and control systems for these products.

This covenant shall include proprietary technical or special knowledge gained during [Mr. Kelley's] period of employment with [Chromalox] and shall encompass the continental United States and those foreign countries where [Chromalox] is or has been engaged in business activities.

This covenant also includes the Agreement not to disclose, orally or in written form, any information relating to the above to any current competitors or future competitors."

(Plaintiff's Exhibit Number 1). (emphasis added).

Kelley also signed a confidentiality agreement that is undated, but reads, in pertinent part:

"I shall not disclose to anyone, directly or indirectly, except as my duties at [Chromalox] may require, during or subsequent to the term of my employment by [Chromalox], any trade secret or confidential information regarding the business of [Chromalox]. Trade secret or confidential information for this purpose shall include, but not be limited to, product information, engineering information, manufacturing information, customer lists, company policies and procedures, and any financial information (including results, budges, other financial plans and systems) not already available to the public . . ."

(Plaintiff's Exhibit 2).

Kelley's work at the LaVergne plant started in the summer of 2003 as a product specialist. Kelly's job duties included providing technical support to Chromalox's distributors for its line of temperature control products with primary emphasis on the Ogden products that Chromalox acquired. Kelley assisted distributors in the selection of the correct temperature control for the particular product that was to be sold to end users and the specifications necessary for the controls. Kelley's actual job duties did not involve end users. Chromalox had several methods for purchases of its products by end users, including purchases by website or telephone with customer service

3

assistance.

For his Chromalox position, Kelley received training on the use of Chromalox's computer system, training with Chromalox distributors and its representatives to familiarize himself with Chromalox' product lines, and on-the-job training with Chromalox's engineers and other technicians about Chromalox's products. Kelley was familiar with Chromalox's product designs, that are also available on Chromalox's website.

Chromalox notes that Kelley acquired "industrial knowledge" of the heating and control industry during his employment with Chromalox, and that Kelley accessed the identity, location and contact information of Chromalox customers as well as the costs of Chromalox's products and components, including assembly costs and other vendor cost information. Kelley also assisted in preparing bid quotations that included cost estimates as well as Chromalox's pricing and marketing strategies.

In 2005, Kelley became aware that Georgia Oven sought a salesman in Tennessee that would be a new market for Georgia Oven. Kelley ultimately agreed to join Georgia Oven and gave notice that he was leaving Chromalox. At Chromalox's request, Kelley extended his employment through January 13, 2006. Upon an inquiry from Johnnie Guthrie, Chromalox's director of engineering, Kelly advised Guthrie that he was going to work for Georgia Oven.

Kelley is Georgia Oven's only sales representative in Tennessee. For his new duties at Georgia Oven, Kelley services Georgia Oven's end users in Tennessee and generates new business by selecting names of end users from the Tennessee Manufacturers Directory. The proof, however, has established that Kelley contacted at least 30 current or prospective customers of Chromalox in Davidson County. (Plaintiff's Exhibit No. 2). Chromalox has not lost any customers or sales to

4

Georgia Oven.

## B. Conclusions of Law

In a diversity action, the District Court applies the substantive law of the forum state, Erie R.R. Co. v. Tompkins, 304 U.S. 564 (1938), including the foreign state's choice of law principles. Klaxton Co. v. Stenton Electric, Mfg. 313 U.S. 487 (1941). Under Tennessee's choice of law principles for contract claims, the governing law is the state that the parties intended to govern their agreement. Godwin Bros. Leasing, Inc. v. H & B, Inc., 597 S.W.2d 303 (Tenn. 1980). The Chromalox-Kelley agreements do not reflect their choice of law for any particular state to govern their contract disputes. Kelley's employment was at Chromalox's LaVergne plant in Tennessee. Both parties argue Tennessee law as the governing law in this action. Clearly, the parties' intention was to apply Tennessee law in their contract disputes. Thus, the Court applies Tennessee law.

The standards for determining whether to grant a preliminary injunction are: (1) the movants's likelihood of success or the merits; (2) whether the movant will suffer irreparable harm without an injunction; (3) whether the injunction will cause substantial harm to others, and (4) the impact of the injunction of the public interest. Performance Unlimited v. Questar Publishers, Inc., 52 F.3d, 1307, 1381 (6th Cir. 1995). No one element is controlling, but the Court must balance each element. Yet, "if the Plaintiff demonstrates a substantial likelihood of success on the merits, this district has held that the remaining factors will likely favor the plaintiff as well." Total Car Franchising Corporation v. L & S Paint Works, 981 F.Supp. 1079, 1081 (Tenn. 1997).

An employee's agreement with his employer not to compete against his employer upon termination of their employment relationship, is enforceable, provided that the covenant's restrictions are supported by consideration and are reasonable as to geographic and time limitations.

5

Central Adjustment Bureau v. Ingram, 678 S.W.2d 28, 33 (Tenn. 1984). Here, continued employment as well as any salary increase during the employee's employment satisfies the consideration requirement. Amerigas Propane, Inc. v. J.T. Crook, 844 F.Supp. 379, 385 (M.D. Tenn. 1993). As to time and geographic restrictions, Tennessee courts have upheld agreements of more than twelve (12) months, William B. Tanner v. Taylor, 530 S.W. 2d 523 (Tenn. Ct. App. 1974), to three years, Dabora, Inc. v. Kline, 884 S.W. 2d 475, 478 (Tenn.Ct. App. 1994) and have upheld a nationwide geographic restriction. Id. at 477. On these two elements, the parties are not in dispute.

The Defendants contend that a breach of the Chromalox -Kelley agreement does not arise because Kelley's work with Georgia Oven does not place him in competition with Chromalox. In essence, Kelley insists that he does not have the same employment duties at Georgia Oven that he had at Chromalox.

Tennessee law strictly construes employment covenants because any contractual limitations upon market competition are not flavored and are construed in favor of the employee. Hastie v. Rent-A-Driver, Inc., 671 S.W.2d 471, 472 (Tenn. 1984); Advantage Tech, LLC v. Cross, 17 S.W. 3d 637, 644 (Tenn. Ct. App. 1999). To be sure, the Tennessee Supreme Court recognized that:

> Any competition by a former employee may well injure the business of an employer. An employer, however, cannot by contract restrain ordinary competition. In order for an employer to be entitled to a protection, there must be special facts present Oven and above ordinary competition. These special facts must be such that, without the covenant not to compete, the employee would gain an unfair advantage in future competition with the employer.

Hastie, 671 S.W. 2d at 472 (citations omitted).

For this competitive impact inquiry, the Tennessee courts consider the reason(s) for the restriction, the economic hardship on the employee if the covenant were enforced, and whether the

6

covenant is inimical to public interest. All Right Auto Parts, Inc. v. Berry, 409 S.W.2d 361, 366 (Tenn. 1966); Advantage, 17 S.W.3d at 644. Chromalox has the burden of establishing the existence of trade secrets in their disclosure. Hickory Specialities v. B & L Laboratories, Inc., 582 S.W. 2d 583, 586 (Tenn. Ct. App. 1979).

For this evaluation, the Court focuses any confidential information or trade secrets that Kelley acquired during his employment that may operate to Chromalox's detriment, if Kelley continued to work with Georgia Oven. This analysis is common to both of the Chromalox-Kelley agreements.

As a threshold matter, despite the confidentiality agreement, under Tennessee law, "the agreement . . . must be interpreted by reference to common law principles, because, a 'nondisclosure agreement only affirmed the intent of the parties to be bound by the common law of trade secrets'". Wright Medical Technologies v. Grisoni, 135 S.W.2d 561, 588 (Tenn. Ct. App. 2001) (quoting Dynamics Research Corp. v. Analytic Sciences Corp., 400 N.E.2d 1274, 1288 (Mass. App. Ct. 1980).

Under Tennessee law, "a trade secret has been defined as information used in the conduct of one's business which is of a competitive advantage and is not disclosed to the public." Data Processing Equipment Corporation v. Martin, 1987 Westlaw 30155 (Tenn. Ct. App. Dec. 30, 1987) (citation omitted). "One of the factual considerations in the determination of what constitutes a trade secret is 'the ease and difficulty with which information could properly be acquired and duplicated by others . . .' If a matter is 'disclosed by the marketed product, [it] cannot be a secret.'" Eagle Vision, Inc. v. Odyssey Medical, Inc., 2002WL19025615 *4; Tenn Ct. App. August 14, 2002) (quoting restatement of Tort Section 757, Comment B, and Hickory Specialties, 582 S.W. 2d at 587.

7

In Venture Express, Inc. v. Zilly, 973 S.W.2d 602, 606 (Tenn. Ct. App. 1998), the Tennessee Court of Appeals outlined a number of factors to be considered on whether information is, in fact, a trade secret or confidential information, but excluded the following: "(1) remembered information as to business practices; (2) the special needs and business habits of certain customers; and (3) the employee's personality and relationships which he has established with certain customers."

In another decision, the Tennessee Court of Appeals noted other factors to be considered: "(1) the extent to which the information is known outside [the business]; (2) the extent to which it is known by employees and others involved in [the] business; (3) the extent of measures taken by [the business] to guard the secrecy of the information; (4) the value of the information to [the business] and to [its] competitors; (5) the amount of money or effort expended by [the business] in developing the information; (6) the ease or difficulty with which the information could be properly acquired or duplicated by others." Stangenberg v. Allied Distr. And Building Serv. Co. Inc, 1986WL7681 at *6 (Tenn. Ct. App. July 9, 1986), (quoting Restatement of Torts, Section 757 (1939)).

Under Tennessee law, an employee's acquisition of the former employer's business information can qualify as protected information. In In Re: Intergrative Health Services, Inc., 258 B. R. 96 ( Bankr. D. Del. 2000), the Bankruptcy Court applied Tennessee law to an employer's financial information that the court found to be a trade secret.

> The debtor's [employer's] financial information is clearly not known outside the business. While the cost of certain products and the amount of reimbursable cost may be ascertainable, the [employer's] fixed cost and profitability are not widely known or public knowledge. Additionally, there is not evidence that any of the [employer's] rank and file employees had knowledge about the [employer's] financial information. That information clearly has value both to the [employer] and to their competitors. Accordingly, we conclude that the [employer's] financial

8

information is confidential.

We find that the Defendant's customer lists are not public either.

Id. at 103. The Court noted that the former worker's knowledge of the debtor's fixed cost and profitability and customer's lists are not general knowledge and therefore, that information remains protected under Tennessee law. Id. at 103, citing Hickory Specialties.

Here, Kelley breached his employment contract because the clear language of the contract precluded employment with any firm in the heating industry for a period of one year. Yet, Chromalox has not established the likelihood of a competitive injury nor Kelley's disclosure of confidential trade secrets. It is undisputed that Kelly has not disclosed any confidential information, nor taken any confidential Chromalox documents that are covered by his agreements with Chromalox. The Court finds that Chromalox has not established any "damages caused by the breach of the contract". ARC Live Med., Inc. v. AMC-Tennessee, Inc., 183 S.W.3d 1, 26 (Tenn. Ct. App. 2005) (citations omitted).

To be sure, Kelley contacted some current Chromalox customers, but it is undisputed that Kelley never interacted with these customers while he was employed with Chromalox. Kelley did not have regular contacts with end users of Chromalox's products, but instead worked the Chromalox distributors. The Court notes that information on the specification of Chromalox's products as well as some pricing information are available on Chromalox's website.

Plaintiff argues that a preliminary injunction is appropriate to give effect and meaning to Kelley's agreement not to compete. Yet, to do so would ignore applicable Tennessee law that requires more than a breach of contract. Plaintiff must also prove a competitive injury. Given the Tennessee rule on the enforcement of the Kelley-Chromalox employment agreement, the Court does

9

not find a sufficient showing to warrant an injunction. Thus, the Plaintiff's motion for a preliminary injunction (Docket Entry No. 36) should be denied.

An appropriate Order is filed herewith.

**ENTERED** this the 25th day of January, 2007.

WILLIAM J. HAYNES, JR.
United States District Judge